IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-cv-00143-MR

| | |
|---|---|
| BRANDIS JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| BRUCE MCNEMAR, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 58] and Defendant's Motion to Seal [Doc. 61].

**I.   PROCEDURAL BACKGROUND**

The Plaintiff Brandis Jordan, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at the Alexander Correctional Institution ("Alexander"). [Doc. 1]. The Complaint asserted excessive force claims against Alexander employees Officers FNU Daves ("Officer Daves") and Bruce McNemar ("Officer McNemar") in their individual capacities for allegedly using excessive force on Plaintiff. [Id.]. Plaintiff alleged that, on July 13, 2018 at approximately 8:00 p.m., he was returning from the shower and in restraints. Plaintiff alleges that Officer Daves gave Plaintiff a direct order to lift his arm

so that Officer Daves could pat Plaintiff down. Plaintiff further alleges that when Plaintiff complied, Officer McNemar punched Plaintiff and Officer Daves slammed Plaintiff to the ground. Finally, Plaintiff alleges that once Plaintiff was on the ground, both officers "began to beat [him] up" and Officer Daves punched Plaintiff "all over the face and head until a code was called." [Doc. 1 at 3].

The Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A and Plaintiff was allowed to proceed with his excessive force claim. [Doc. 9]. Plaintiff never effected service on Defendant Daves. After Plaintiff responded to the Court's Order to Show Cause why Defendant Daves had not been timely served, the Court dismissed Defendant Daves as a Defendant in this matter for Plaintiff's failure to show good cause. [Docs. 35, 37, 39]. Thereafter, the Court entered a Consent Protective Order governing the production and dissemination of certain confidential documents and materials. [Doc. 41].

On July 27, 2020, Officer McNemar moved for summary judgment of Plaintiff's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 58]. In support of his summary judgment motion, Officer McNemar submitted a memorandum, his own Declaration, the Declaration of Eric Dye, various prison records and policies, case law, and video footage

2

of the alleged incident. [Docs. 59, 59-1, 59-2, 61-1 through 61-4]. At this time, Officer McNemar also moved to seal some of these submissions. [Doc. 61].

On August 10, 2020, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 67]. Plaintiff timely filed a response to Officer McNemar's summary judgment motion. [Doc. 68]. Plaintiff's response included two Declarations by Plaintiff, submitted under penalty of perjury, and a document captioned "Motion for Failure to Act: Response to Motion for Summary Judgment."[1] [Docs. 68, 68-1, 68-2].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is

---

[1] On June 24, 2020, before Defendant filed his summary judgment motion, Plaintiff filed various documents that purported to be in opposition to Defendant's motion. [See Doc. 55]. These documents are substantially similar to those Plaintiff filed after Defendant's motion in response thereto. [Cf. Doc. 55 and Doc. 68]. To the extent these documents are submitted under penalty of perjury, the Court considers them together with Plaintiff's subsequent response in adjudicating Defendant's summary judgment motion.

3

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

4

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.[2]

At the relevant times, Officer Bruce McNemar was a correction officer trainee. [Doc. 60-6 at ¶ 6: McNemar Dec.]. On July 13, 2018, when Officer McNemar was assisting Officer Daves in escorting Plaintiff from the shower to Plaintiff's cell in segregation, another inmate passed Plaintiff an envelope filled with coffee from the other inmate's cell door. [Id.; Doc. 68 at 2]. Officer McNemar gave Plaintiff several direct orders to drop the item. [Id.]. Plaintiff refused those orders and, after over a minute passed, Officers McNemar and Daves placed Plaintiff against the wall in the hallway. [Id.; see Doc. 61-3 (Video Footage Ex.); Docs. 63, 65, & 70]. Plaintiff became agitated and began using foul language toward the officers. [Id.]. Plaintiff and Officers Daves and McNemar appeared to be conversing for over a minute with Plaintiff against the wall. [Doc. 61-3]. Plaintiff then dropped the envelope on the floor. Officer Daves bent down and picked it up. [Id.] Within seconds,

---

[2] As noted, Defendant's forecast of evidence includes the video footage of the incident, which largely refutes and/or contradicts the Plaintiff's forecast of evidence. Because a plaintiff cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, the Court cannot adopt Plaintiff's forecast of evidence for the purpose of ruling on this motion to the extent that it is inconsistent with the video evidence. See Scott, 550 U.S. at 380, 127 S. Ct. at 1776.

Plaintiff quickly raised his arms over his head and turned toward Officer McNemar. [Id.]. Officer Daves immediately brought Plaintiff to the ground. [Id.]. Officer Daves struck Plaintiff several times. [Id.]. Officer McNemar raised his arm toward Officer Daves and stopped Officer Daves' blows. [Id.]. Officer McNemar attempted to hold Plaintiff's legs and called for backup. [Doc. 60-6 at ¶ 6]. Together, both Officers held Plaintiff still on the ground for approximately 25 seconds before additional officers appeared to assist. [Doc. 60-6 at ¶ 6]. When backup arrived, Officer McNemar left the wing. [Id.]. Officer McNemar never struck Plaintiff in the face or anywhere else. [Id. at ¶ 7].

Because Officers McNemar and Daves used force on Plaintiff, the matter was referred to Lieutenant Dale Hunt for investigation. [See Doc. 60-1 at ¶¶ 5-8: Dye Dec.]. Plaintiff submitted a grievance regarding the use of force incident. [Id. at ¶ 8]. Plaintiff's grievance was immediately given to Hunt as the Officer-in-Charge. [Id.]. As part of the investigation, Hunt reviewed the surveillance footage of the incident at issue. [Id.]. Hunt concluded in his report that Officer McNemar followed Alexander's Standard Operating Procedure related to the use of Force, Section .0453, and properly handled the incident. [Id.]. Hunt found that no further action was required and that Plaintiff's claims that Officer McNemar assaulted him and/or used

7

excessive force in attempting to restrain Plaintiff were without merit. [Id.]. Eric Dye, the Deputy Warden at Alexander, reviewed the surveillance video capturing the use of force incident and saw no evidence that Officer McNemar either assaulted Plaintiff or used excessive force in attempting to restrain Plaintiff. [Doc. 60-1 at ¶¶ 3, 8]. As a result of the incident at issue, Plaintiff was charged with three offenses, including interference with staff, profane language, and disobeying an order. [Doc. 60-1 at ¶ 12]. These charges were subsequently upheld. [Id.]. Plaintiff was released from custody on June 15, 2020. [Doc. 60-1 at ¶ 13].

## IV. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is

because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "Rather, in these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations and citation omitted).

Here, Plaintiff contends that Officer McNemar violated his rights under the Eighth Amendment by using excessive force on Plaintiff. The forecast of evidence before the Court, however, leaves no genuine issue of material fact for trial. The video evidence clearly shows that Officer McNemar did not use excessive force on Plaintiff. Officer McNemar acted reasonably under the circumstances, exercising only that minimal amount of force necessary to restore order and discipline. Officer McNemar plainly evinced no purpose to cause harm.

As such, the Court will grant Defendant's Motion for Summary Judgment.

## V. MOTION TO SEAL

Defendant, through counsel, moves the Court to seal Exhibits A, B, C, and D to the Declaration of Eric Dye submitted in support of Defendant's Motion for Summary Judgment. [Doc. 61]. Defendant filed these documents under seal. [See Docs. 61-1 through 61-4]. Defendant states that these documents were produced in discovery and "reference information or documents which are inmate records deemed confidential pursuant to N.C.G.S. §§ 148-74 and -76; confidential pursuant to 34 U.S.C. § 30301, et seq., 28 C.F.R. Part 115.41, 115.81, 115.241, 115, 381, and 115.341; confidential pursuant to N.C.G.S. § 126-22; and constitute security information or security or security risks deemed confidential pursuant to N.C.G.S. § 132-1.7." [Doc. 61 at 2].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Defendant's motion. Defendant filed his motion in July 2020,

and it has been accessible through the Court's electronic case filing system since that time.

As to records at issue, the public's right of access to such information is substantially outweighed by the competing interest in protecting the details of such information, particularly as defined in the provisions referenced by Defendant. Having considered less drastic alternatives to sealing these particular documents, the Court concludes that sealing these records is necessary to protect the implicated privacy, security, and confidentiality interests. As such, the Court with grant Defendant's motion and order that Exhibits A, B, C, and D to the Declaration of Eric Dye, filed at Docket Entries 61-1 through 61-4, remain under seal.

## VII. CONCLUSION

For all the foregoing reasons, Defendant McNemar's motion for summary judgment and motion to seal are granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant McNemar's Motion for Summary Judgment [Doc. 58] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant McNemar's Motion to Seal [Doc. 61] is **GRANTED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: February 18, 2021

*[signature]*

Martin Reidinger
Chief United States District Judge